UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Dana M. Edwards, | ) | CASE NO. 1:10 CV 1798 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| Vs. | ) | |
| | ) | |
| Velocity Investments, LLC, *et al.*, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

This matter is the Court upon Defendant Thomas Glennon and Immerman & Tobin Co., L.P.A.'s Motion for Summary Judgment as to All Claims (Doc. 29) and Defendant Velocity Investements, LLC's Motion for Summary Judgment as to All Claims (Doc. 30). Also pending is Plaintiff's Motion for Summary Judgment (Doc. 31). The motions seek summary judgment only as to liability. This case arises out of the collection of a debt. For the reasons that follow, defendants' motions are DENIED and plaintiff's motion is GRANTED. The issue of damages remains pending.

1

**FACTS**

Plaintiff, Dana M. Edwards, filed this lawsuit against defendants, Velocity Investments ("Velocity"), Thomas Glennon, and Immerman & Tobin, Co., alleging wrongdoing in connection with the collection of a debt.

The facts of this case are largely undisputed.

Plaintiff held a credit card, which was in default. Defendant Velocity is in the business of purchasing consumer debts that are in default for the purpose of collecting on those accounts. Velocity purchased the debt owed by plaintiff.

Generally, Velocity sends a demand letter to the creditor and turns over the account to a law firm for further collection actions. In this case, Velocity retained the law firm of defendant Immerman & Tobin to collect on plaintiff's account. Defendant Glennon is an attorney employed by Immerman & Tobin.

In 2006, Glennon initiated a case on behalf of Velocity and against plaintiff in the Canton Municipal Court. Velocity obtained a default judgment in the amount of $2,707.23, plus interest and costs. On August 14, 2007, Immerman filed a wage garnishment action to collect on the debt. The evidence as to the amount garnished from plaintiff's wages is somewhat inconsistent. According to plaintiff's pay stubs and her declaration, as of October 6, 2007, plaintiff's wages were garnished in the amount of $1702.86.[1] Thereafter, an additional amount of $540.22 was garnished. The system used by Immerman and Tobin shows that it collected the sums of $578.68, $262.75, and $598.68, and Glennon testified that he received approximately $1500

---

[1] Defendants ask the Court to strike the pay stubs submitted by plaintiff. The Court denies defendants' request in that plaintiff properly authenticates the documents via her declaration.

from the garnishment.  Defendants do not dispute that these sums were derived from the garnishment.  On the other hand, the records from the Canton Municipal Court show that it received $543.03 from a garnishment in 2009.  There is no record that any other funds were ever garnished or that any funds at all were disbursed.

Sometime after August 14, 2007, plaintiff filed a motion to vacate the default judgment.  At a hearing on the motion to vacate, the municipal court judge entered the following Agreed Judgment Entry:

> This matter came on for hearing on Defendant's Motion to Vacate Judgment.  Upon consideration by the Court and agreement of the parties it is ordered as follows:
>
> 1. The Motion to Vacate is hereby withdrawn.
>
> 2. The $1771.00 presently held by the Clerk of Courts shall be turned over to the Plaintiff's attorney forthwith.
>
> 3. All garnishments presently pending are hereby cancelled.
>
> 4. Defendant shall forthwith pay to the Plaintiff through its attorney an additional $67.00 but no later than 30 days from the date of this Entry.
>
> 5. Upon payment of the additional $67.00 in the 30 days the judgment shall be satisfied in full.

According to plaintiff, she provided her pay stubs to her attorney during the hearing in order to determine the amount garnished from her wages.  She did not check with the clerk of courts to determine the amount of funds held by the Court.  Nor did Velocity or Immerman verify the amount held by the Court.  Plaintiff was not present when the order was signed.  According to defendants' internal records, Velocity received monies *before* the hearing, which matched the amounts garnished.  On November 4, 2007, plaintiff remitted a check in the amount of $67.00.

3

Nearly two years later, on August 14, 2009, defendants initiated a new garnishment. In connection with the garnishment, Glennon provided two affidavits, in which he averred that there was an active judgment against plaintiff. The affidavits further listed the amount of the debt allegedly owed. Plaintiff responded to the garnishment by sending a letter to Immerman. Plaintiff informed Immerman that the account was settled and closed by the settlement agreement. In response, Glennon sent the following letter of September 8, 2009:

> Upon review, it does appear that the matter was settled. However, there was a breach of the settlement agreement. We were to receive the sum of $1771.00 held by the court and an additional $67.00 as full satisfaction of the debt. Unfortunately, we received neither payment. Upon review with the Court, the Court was not holding any funds when the judge rendered his decision and we have not received any funds from you or your employer. As such there is a balance due and owing and we do intend to proceed on that balance.
>
> Because there have been no payments on this account since 2007 I cannot release the garnishment at this time....

Thereafter, plaintiff and her attorney attended a garnishment hearing at the Canton Municipal Court. The docket indicates that defendant and its counsel "did not appear." On September 17, 2009, the court held that "judgment was satisfied on or about 11/4/07," and concluded that the case was "satisfied and dismissed."

On October 16, 2009, Glennon sent a collection letter to plaintiff purporting to collect on the debt. The letter provides as follows:

> Velocity...is giving you the opportunity to settle the outstanding debt for up to 50% of the current balance.... It is important to clear up delinquent accounts. It stops future means of collection. I am sure that you would like to do so.... This offer will settle this debt and terminate further action....

Glennon avers that Immerman was unaware of the court's September 17th order when it sent this letter to plaintiff.

4

Days after the parties filed summary judgment motions in this case, Glennon, on behalf of Immerman and Velocity, sent yet another letter to plaintiff. The letter states as follows:

> Velocity...is giving you the opportunity to settle the outstanding debt for up to 85% of the current balance.... It is important to clear up delinquent accounts. It stops future means of collection. I am sure that you would like to do so.... This offer will settle this debt and terminate further action....

This lawsuit contains three claims for relief. Count one asserts violations of the Fair Debt Collection Practices Act ("FDCPA"). Count two asserts violations of the Ohio Consumer Sales Practices Act ("OCSPA") and count three seeks declaratory and injunctive relief. The parties cross-move for summary judgment and all motions are opposed.

**STANDARD OF REVIEW**[2]

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution

---

[2] The Court notes that the motions for summary judgment are subject to application of the recent revision of Fed.R.Civ.P. 56, effective December 1, 2010. The advisory comments concerning the 2010 amendments clearly state, however, that the "standard for granting summary judgment remains unchanged."

will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of [his] pleadings, but [his response], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial. If he does not respond, summary judgment, if appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985). However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

**ANALYSIS**

The parties agree that whether a debt collector has violated the FDCPA is viewed through the eyes of the "least sophisticated consumer." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006) (citing *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1029 (6th Cir. 1992)). The least sophisticated consumer test is an objective test.[3] *Harvey*, 453 F.3d at 331; *Kelly v. Great Seneca Fin. Corp.*, 443 F. Supp. 2d 954, 957 (S.D. Ohio 2005). The standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Smith v. Computer Credit, Inc.*, 167 F.3d 1052, 1054 (6th Cir. 1999); *Gradisher v. Check Enforcement Unit, Inc.*, 210 F. Supp. 2d 907, 912 (W.D. Mich. 2002). Nonetheless, the objective aspect of the test protects a debt collector from "bizarre or idiosyncratic interpretations of debt collection notices." *Clomon v. Jackson*, 988 F.2d 1314, 1319-20 (2d Cir. 1993); *see also Gionis*, 405 F. Supp. 2d at 864; *Kafele v. Lerner, Sampson & Rothus, L.P.A.*, No. 2:02-cv-0743, 2005 U.S. Dist. LEXIS 11127, *7 (S.D. Ohio June 9, 2005); *Lewis v. Marlin*, No. C-2-97-1281, 1999 U.S. Dist. LEXIS 22135, *14 (S.D. Ohio March 11, 1999). The test "presumes that a consumer possesses 'a rudimentary amount of information about the world and is willing to read a collection notice with some care.'" *Gionis*, 405 F. Supp. At 864 (quoting *Clomon,* 988 F.2d at 1319).

1.     15 U.S.C. § 1692d

This provision of the FDCPA provides:

---

[3]     The issue of FDCPA liability is often amenable to treatment as a matter of law. *See Savage v. Hatcher*, No. 03-3437, 109 Fed. Appx. 759, 762 (6th Cir. Sept. 7, 2004) ("It is well-settled that courts may properly make the objective determination whether language effectively conveys a notice of rights to the least sophisticated debtor.").

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
>> (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
>>
>> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
>>
>> (3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.
>>
>> (4) The advertisement for sale of any debt to coerce payment of the debt.
>>
>> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
>>
>> (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

Defendants argue that they are entitled to summary judgment because the filing of the second garnishment does not amount to "harassing, oppressive, or abusive" conduct. According to defendants, no statute bars a creditor from using lawful means to collect on a judgment. Defendants argue that the default judgment entered by the municipal court constituted a valid judgment and, as such, they were legally entitled to collect on it. Defendants claim that plaintiff never paid the $1771.00 required by the terms of the parties' settlement agreement. As such, defendants were allowed to collect the full amount of the default judgment, less the payments they previously received. Defendants argue that because the municipal court did not enter a "final order" until one month after the filing of the second garnishment, the collection actions taken by defendants were proper.

Plaintiff argues that defendants engaged in a host of conduct that amounts to harassing, oppressive, or abusive conduct.  According to plaintiff, defendants violated the FDCPA by: filing false affidavits in support of the second garnishment; refusing to dismiss the second garnishment; contacting plaintiff even after the municipal court confirmed that plaintiff already satisfied the judgment; and contacting plaintiff urging her to "settle her debt," during pendency of these summary judgment motions.  According to plaintiff, the "least sophisticated consumer" would have believed that she satisfied her debt upon the payment of the $67.00.  Plaintiff points out that the plain language in the agreed judgment entry demonstrates that plaintiff satisfied her obligations thereunder.  Moreover, plaintiff points out that the municipal court itself confirmed that the agreed judgment was indeed satisfied by plaintiff's $67.00 payment.  Thus, any attempt to later collect on the default judgment violated the FDCPA.

Upon review, the Court finds that reasonable minds could only conclude that defendants violated the FDCPA by instituting the second garnishment.  As an initial matter, the Court agrees that the agreed judgment entry of 2007 is clear and unambiguous.  It provides as follows:

1. The Motion to Vacate is hereby withdrawn.

2. The $1771.00 presently held by the Clerk of Courts shall be turned over to the Plaintiff's attorney forthwith.

3. All garnishments presently pending are hereby cancelled.

4. Defendant shall forthwith pay to the Plaintiff through its attorney an additional $67.00 but no later than 30 days from the date of this Entry.

5. Upon payment of the additional $67.00 in the 30 days the judgment shall be satisfied in full.

On its face, the agreed judgment entry requires that plaintiff pay $67.00 within 30 days of the date of the entry.  It further requires the *clerk of court* –not plaintiff– to turn over $1771.00.

9

Moreover, it expressly provides that upon plaintiff's $67.00 payment, the judgment shall be deemed satisfied in full.  It is undisputed that plaintiff made this $67.00 payment as required.  Defendants' argument rests on the notion that plaintiff is somehow responsible for the failure of the clerk of courts to remit the $1771.00.  From the face of the agreed judgment entry, however, this obligation fell squarely on the clerk of courts.[4]

It is undisputed that defendants never returned to the municipal court to either enforce or set aside the 2007 agreed judgment entry.  Rather, defendants unilaterally determined that plaintiff breached the settlement agreement when the clerk of courts failed to remit $1771.00.  Defendants then determined that the default judgment was somehow revived by plaintiff's alleged breach of the agreed judgment.  Defendants cite no law for this proposition.   Notably, defendants do not argue that the parties never reached an agreement to settle the dispute.  Rather, defendants argue that the default judgment was still a "valid judgment" because the municipal court did not enter a dismissal order or vacate the default.  But, the municipal court did not vacate the default judgment because plaintiff agreed to withdraw her motion in light of the

---

[4] It is unclear whether defendants are claiming that plaintiff misrepresented the amount held by the clerk or whether defendants are claiming that the clerk of court erred by failing to remit the $1771.00.  Plaintiff testified that she brought her pay stubs to the hearing and showed them to her attorney.  She further indicated that she had no idea that any of these funds had previously been released to defendants.  Defendants claim that the court records show that no funds were ever garnished.  Yet, defendants do not dispute that they received funds from the garnishment.  Moreover, defendants acknowledge that if you add together the amounts they previously received to the amounts to be paid under the agreed judgment entry, *i.e.*, the $1771.00 held by the clerk  and the $67.00 to be received from plaintiff, the total is actually slightly more than defendants would have obtained as a result of the default judgment.

10

agreed judgment. The Court finds that the agreed judgment, which contained the parties' agreement to settle the dispute, superceded the default judgment. The Court further finds that plaintiff complied with her obligations under the agreed judgment. This conclusion is consistent with the determination by the municipal court, which held that plaintiff satisfied the agreed judgment by remitting the $67.00 check. Because the default judgment was not a valid judgment and because plaintiff satisfied her obligations under the agreed judgment entry, defendants' institution of the second garnishment was not proper.

Having so concluded, the Court finds that the action of instituting an improper garnishment action amounts to "harassing, oppressive, or abusive" conduct as a matter of law.[5] The only argument defendants raise rests on the notion that the law permits them to take legal actions, including instituting garnishment proceedings, to collect debts. Defendants do not argue that an improper garnishment would not qualify as "harassing, oppressive, or abusive" conduct under the statute. The Court finds that garnishing an individual's wages where the underlying debt has been legally extinguished violates 15 U.S.C. § 1692d. As defendants themselves point out, the second garnishment prevented plaintiff from meeting her other financial commitments. Rather than returning to the municipal court and attempting to legally enforce or set aside the agreed judgment, defendants instituted an improper garnishment on an invalid default judgment. Even after plaintiff informed defendants that the debt was satisfied by the agreed judgment entry, defendants continued to pursue the garnishment. Moreover, after the municipal court confirmed that plaintiff satisfied the debt, defendants still made attempts to collect from plaintiff. Because

---

[5] Plaintiff did not move for summary judgment on this claim. However, after a review of the evidence, the Court *sua sponte* concludes that plaintiff is entitled to judgment as a matter of law.

11

of the serious consequences caused by an improper garnishment, the Court finds that such conduct constitutes "oppressive or abusive" conduct for purposes of the statute.  Accordingly, plaintiff is entitled to summary judgment.[6]

      b.      15 U.S.C. § 1692e (1692e(2), 1692e(5), and 1692e(10))

These provisions prohibit a debt collector from making false, deceptive, and misleading representations in connection with debt collecting.  Specifically, debt collectors may not misrepresent the "character, amount, or legal status of any debt," "threat to take any action that cannot legally be taken," or "use false representations or deceptive means to collect or attempt to collect any debt."  Defendants argue that they are entitled to summary judgment on these claims because plaintiff cannot establish that the calculations contained in the affidavits supporting the second garnishment were incorrect.  In other words, defendants argue that plaintiff cannot establish that she satisfied the debt.  Defendants further argue that plaintiff did not investigate whether the clerk of courts paid defendants the $1771.00.  According to the defendants, the default judgment was valid and, as such, defendants did not misrepresent the status of the debt. With regard to the letters, defendants argue that plaintiff never claimed that the letters violate the FDCPA.  Rather, the complaint alleges wrongdoing only with respect to the second garnishment. Defendants also argue that plaintiff did not assert a claim for violation of 15 U.S.C. § 1692e(5).

In response, plaintiff argues that the affidavits filed in support of the second garnishment misrepresented the status of the debt because they indicated that a current balance was due. Plaintiff also argues that defendants' September 8, 2009 letter falsely indicated that plaintiff

---

[6] To the extent plaintiff relies on correspondence as the basis for her claim, the Court addresses this issue below.

owed the debt, and further falsely stated that plaintiff had not paid the $67.00.  Plaintiff also argues that defendants' letter of October 16, 2009, which was sent after the municipal court expressly confirmed that the $67.00 payment satisfied the agreed judgment, falsely stated that plaintiff had an "outstanding debt" and that defendants had a legal right to pursue further collection on the debt.  Plaintiff points out that defendants' letter of June 20, 2011, which was sent during the briefing on these summary judgment motions, made the same false allegations.  Plaintiff argues that the complaint sufficiently alleges that the letters violate the FDCPA.  According to plaintiff, Rule 8 requires only a short plain statement of the alleged wrongdoing.  Plaintiff points out that the Paragraph 24 provides that "defendants' violations of the FDCPA include but are not limited to the following...."  As such, plaintiff claims that the complaint is not as limited as defendants now argue.  Moreover, plaintiff points out that she provided the correspondence to defendants as part of her initial disclosures and, as such, defendants had a full and fair opportunity to conduct discovery on these claims.  Plaintiff further argues that she received the June 2011 letter only recently and, as such, she could not have included any claims related to this letter in her complaint.

      As an initial matter, the Court finds that plaintiff's complaint does not assert claims for any alleged wrongdoing associated with the letters.  Although the factual section of the complaint extensively discusses the second garnishment, there is no mention whatsoever of any of the letters.   Plaintiff claims that she provided the letters during discovery and, as such, defendants should have known that the complaint alleged wrongdoing associated with the letters.  This Court disagrees.  It is undisputed that the letters relate to the wrongful garnishment claim.  Thus, receipt of the letters would not have put defendants on notice that plaintiff asserted

13

wrongdoing independently of the garnishment. The Court finds that a fair reading of the complaint reveals that plaintiff's claims are limited to the second garnishment. Plaintiff did not seek leave[7] to amend her complaint and, instead, improperly raised claims in the context of summary judgment proceedings. *See, e.g., Tucker v. Union of Needeltrades, Industrial & Textile Employees*, 407 F.3d 784 (6th Cir. 2005). Accordingly, the Court will address plaintiff's claims only insofar as they relate to the second garnishment.[8]

With regard to the second garnishment, the Court find that reasonable minds could only conclude that defendants' actions violate 15 U.S.C. §§ 1692e(2), (5), and (10). Defendants rest on the argument that the default judgment was a valid judgment and, as such, defendants properly garnished plaintiff's wages a second time. As set forth extensively above, the Court disagrees. As the agreed judgment was satisfied upon plaintiff's payment of the $67.00, the debt was extinguished. By filing documents in support of the second garnishment, defendants misrepresented the amount and legal status of the debt. Moreover, defendants' actions constitute

---

[7] The Court recognizes that the June 2011 letter was only recently obtained by plaintiff. Nonetheless, plaintiff must seek leave to amend in order to assert a claim based on the letter. Procedurally, plaintiff cannot simply "assert" a new claim in a summary judgment motion or brief in opposition thereto.

[8] Defendants argue that plaintiff's claim under 15 U.S.C. § 1692e(5) is not properly before the Court. According to defendants, the complaint identifies specific subsections of the FDCPA as the bases for plaintiff's claims. Plaintiff does not expressly allege subsection 1692e(5). The Court rejects defendants' argument. Plaintiff alleged a violations of the more general provision, *i.e.*, 15 U.S.C. § 1692e, which encompasses 1692e(5). Accordingly, the Court finds that the complaint states a claim for violation of 15 U.S.C. § 1692e(5), to the extent it is based on the second garnishment.

14

the "threat to take action that cannot legally be taken." By garnishing plaintiff's wages a second time, defendants used "false representations," as no debt was legally owed. Defendants offer no argument to the contrary. Accordingly, the Court finds that plaintiff is entitled to summary judgment with regard to the claims asserted under 15 U.S.C. §§ 1692e(2), e(5), and e(10).

 c. 15 U.S.C. § 1692e(8)

Defendants move for summary judgment on this claim. According to defendants, this statutory provision involves the false reporting of credit information. Defendants claim that there is no evidence indicating that defendants ever reported any false credit information about plaintiff. Plaintiff did not offer any opposition to defendants' arguments. As such, defendants are entitled to summary judgment.

 d. 15 U.S.C. § 1692f(1)

This provision of the FDCPA provides as follows:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> > (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

According to defendants, they are entitled to summary judgment because plaintiff's debt was not paid. Defendants claim that they did not violate this provision because the amount they sought to collect in the second garnishment was authorized by both the agreed judgment entry and the default judgment. On the other hand, plaintiff argues that she is entitled to summary judgment because the agreed judgment entry was satisfied in full and, as such, her underlying debt was extinguished upon her payment of the $67.00. Because no debt existed, the second

15

garnishment was an attempt to collection on a debt not authorized by the agreed judgment entry and not otherwise permitted by law.

Upon review, the Court finds that plaintiff is entitled to summary judgment. The Court previously concluded that plaintiff's debt was extinguished once she completed her obligation to remit the $67.00 payment as required by the agreed judgment entry. Accordingly, defendants improperly attempted to collect an amount not authorized by the agreement or otherwise permitted by law.

e. Vicarious liability

Velocity moves for summary judgment on the grounds that it took no direct collection action against plaintiff. Rather, all collection actions were taken by Immerman and its attorneys. Velocity argues that vicarious liability is not available under the FDCPA. According to Velocity, plaintiff failed to establish that Velocity is itself a debt collector as that term is defined. In response, plaintiff argues that she established that Velocity is itself a debt collector because it purchased the debt after it was in default. Accordingly, vicarious liability applies.

Upon review, the Court finds that, because Velocity is itself a debt collector, vicariously liability applies. *See, Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103 (6th Cir. 1996) (finding that vicarious liability could not be imposed because entity was not itself a "debt collector" since it obtained debt *before* debt was in default); *Pollice v. National Tax Funding, LLC*, 225 F.3d 379 (3d Cir. 2000)(noting that entity who obtains debt after debt is in default is consider a 'debt collector' for purposes of FDCPA and can be held vicariously liable for the acts of its agents). Here, plaintiff presents evidence indicating that Velocity's primary business is the purchase and collection of defunct consumer debt. Velocity does not dispute that it purchased

16

plaintiff's debt after it was in default. As such, the Court finds that Velocity is itself a debt collector and thus is vicariously liable for the actions of its agents.

  f.  OCSPA

Defendants argue that they are entitled to summary judgment on plaintiff's Ohio Consumer Sales Practices Act claim. According to defendants, plaintiff cannot prove that her account was a "consumer transaction." Defendants claim that plaintiff could not recall what she purchased with her credit card. In the alternative, defendants argue that plaintiff's claims under the OCSPA are entirely derivative of her claims under the FDCPA. According to defendants, they bear no liability under the FDCPA and, accordingly, there can be no liability under the OCSPA.

On the other hand, plaintiff argues that she is entitled to summary judgment on the grounds that consumer debt collection practices are consumer transactions covered by the OCSPA. Plaintiff claims that defendants' violations of the FDCPA also constitute violations of the OCSPA. According to plaintiff, defendants cannot claim a bona fide error under the OCSPA.

Under the OCSPA, it is unlawful for a supplier to act in an unfair, deceptive, or unconscionable manner in connection with a consumer transaction. O.R.C. § 1345.02. "The statute has been generally interpreted as applying to the collection of debts associated with consumer transactions by attorneys." *Turner v. Lerner, Sampson & Rothfuss*, --- F.Supp.2d ----, 2011 WL 834064 (N.D.Ohio 2011). *See also*, *Broadnax v. Greene Credit Service*, 694 N.E.2d 167 (Oh. Ct. App. 1997)(debt collector may be held liable under OCSPA); *Celebrezze v. United Research, Inc.,* 482 N.E.2d 1260, 1262 (Ohio 1984); *Becker v. Montgomery, Lynch*, 2003 WL

17

23335929, at *2 (N.D.Ohio, Feb. 26, 2003).  This Court finds that the institution of garnishment proceedings to collect on a debt that has been legally satisfied constitutes an unfair, deceptive, or unconscionable act for purposes of the OCSPA.

Defendant argues that plaintiff's claim fails because plaintiff did not establish that the underlying debt is "consumer" debt.  This Court disagrees.  Defendant relies on the following testimony,

> Q: Do you recall what you used that Visa for?
>
> A: No.
>
> Q: You don't recall what purchases you made with it?
>
> A:  No.

(Doc. 34 at 35-36).

Plaintiff, however, provides a declaration in which she avers that she used her credit card for "personal use" and not for a "business purpose."  Defendant argues that her declaration is inconsistent with her testimony.  This Court disagrees.  While plaintiff may not have been able to recall specific purchases, defendant never inquired as to whether plaintiff used her credit card for personal –as opposed to business– purposes.  The Court does not find the testimony in plaintiff's declaration to contradict her deposition testimony.  Moreover, the Court notes that plaintiff in fact testified at her deposition that she used the credit card to purchase clothing, gasoline, and food.[9]  (Doc. 34 at 37).  Accordingly, the Court finds that plaintiff establishes that the transaction

---

[9] Plaintiff also discusses certain account documentation, which shows that plaintiff's debt was consumer in nature.  Defendants argue that the documentation is not authenticated.  The Court finds that it need not address this issue since the evidence otherwise establishes that the account was for consumer debt.

at issue is indeed a "consumer transaction" for purposes of the OCSPA.[10]

Plaintiff argues that the evidence establishes that defendants acted intentionally in filing the garnishment. As such, defendants cannot rely on the bona fide error defense. Defendant does not respond to this argument or claim that the garnishment was unintentionally instituted. Accordingly, the Court finds that plaintiff has established an intentional violation of the OCSPA.

g. Declaratory and injunctive relief

In her complaint, plaintiff requests declaratory and injunctive relief. Defendants argue that because they did not violate the OCSPA, plaintiff is not entitled to the relief she requests. As set forth above, this Court rejected defendants' argument. As defendants made no other arguments in opposition to the imposition of declaratory and injunctive relief, the Court finds that plaintiff is entitled to the relief she requests. Defendants are hereby enjoined from instituting any further garnishment proceedings against plaintiff for the debt that was the subject of the agreed judgment entry.

**CONCLUSION**

For the foregoing reasons, Defendant Thomas Glennon and Immerman & Tobin Co., L.P.A.'s Motion for Summary Judgment as to All Claims and Defendant Velocity Investements, LLC's Motion for Summary Judgment as to All Claims are DENIED as to liability. Plaintiff's Motion for Summary Judgment is GRANTED as to liability. The issue of damages remains pending.

---

[10] Plaintiff also discusses certain account documentation, which shows that plaintiff's debt was consumer in nature. Defendants argue that the documentation is not authenticated. The Court finds that it need not address this issue since the evidence otherwise establishes that the account was for consumer debt.

19

IT IS SO ORDERED.

                                       /s/ Patricia A. Gaughan
                                       PATRICIA A. GAUGHAN
                                       United States District Judge

Dated: 9/8/11